Good morning, Your Honors. May I reserve three minutes at the end? Yes. May it please the Court, my name is Howard Hom, on behalf of the petitioner, Mr. David Amponin. But who is Mr. David Amponin? We had six days of trial testimony, nearly 400 pages, over a span of two and a half years. But sadly to say, that transcript only portrays a part of his life, part of his character. Sadly to say, the immigration judge failed to follow the decision in matter of Tihon, and failed to inquire into the nature and circumstances of the initial fraud. Why did Mr. Amponin lie and say he was single to come to the United States? The immigration judge made a plain statement, I'm not going to hold it against him, because that's what the statute says I should forgive him for. But that's not enough. The motivation for why he did it is an indication of the measure of the character of the individual before the immigration judge. That character, that individual person, that part of his life, why did he do what he did to come to the U.S., should be balanced against the negative aspects of a man's existence. In matter of Tihon, the concurring and dissenting opinion of board member Rosenberg specifically said, we should look at the nature and circumstances, because not only would it perhaps mitigate what the person did wrong, lying about his marital status, but it will also indicate to him, to the court, some good aspects of a person's life. Probably didn't help that he lied about his brother, too. Well, Your Honor, the Respondent first testified Daniello, the brother, is single. Then later on, he testified Daniello is married and has three children. Then the mother testifies and says Daniello is married with three children, and the immigration judge picks up on that on the third hearing or the fourth hearing and states, why did you first, did you hear your mother testify? Yes, ma'am. And she said your brother was married and had children, and you didn't tell me that. And the poor applicant, poor Mr. Appleton gets confused and says, I'm sorry I lied. But he had told the truth at the second hearing or the second time he was asked that question. So the fact that he lied is an adverse factor. I don't discount that. But why did he do it? He testified he did it to protect his brother's immigration status. Under 101F6, the statutory bar against a finding of good moral character requires that the false testimony be for the purpose of obtaining an immigration benefit for himself, not to protect his brother. Daniello, as his brother, has no statutory relationship to the eligibility. Only parents or spouses and children relationships will qualify for the fraud waiver under 237A1H. So that was not a material thing. It's wrong, but I think the Board of Immigration Appeals mischaracterized not only the facts but the statement of the law and the facts because this was not a statutory ineligibility, which brings us to the other question I would address in a little bit about voluntary departure. Before you get to that, wasn't there a letter from his wife saying that he abandoned her and the family? Yes, sir. And she came to court and testified to the immigration judge and said, my husband and I had a little tiff, and he said these things, that I've got a girlfriend and don't expect me to come back home to the Philippines and bring you to the U.S. But that belies the facts. He did petition for her as his spouse. She did come to the U.S. under the V visa. And interestingly enough, she came to the U.S. under a V visa even though the American Embassy knew she participated in this cover-up. And once she got to the U.S., she adjusted status. She's a permanent resident now, even though the immigration service, I would imagine, would know about her participation in this. But to address Your Honor's question, she recounted that. She repudiated that, both in a written letter to the immigration judge in 2000, before she came to the U.S., and then again in open court. She said, we had a fight, he said those bad things, and I was mad at him, so I said those bad things back and wrote a letter to the U.S. Embassy. But that's not true. It's true that he was married, but it wasn't true that he abandoned me. He still supported me. Well, let me ask you another question. The immigration judge was a little bit sympathetic and granted voluntary departure. The BIA said no voluntary departure and issued an order of removal. Now, assuming that we disagree with you, must we remand this case to the immigration judge for the order of removal, or is it possible for the BIA to make such an order? I believe that the holding in Olino-Camacho requires a remand. I understand that in this particular case, the immigration judge issued an alternative order stating that if the respondent fails to depart as required, then we shall pick him up and deport him. So this was a contingent order. If he fails to depart as required, it doesn't say if my decision is overturned on appeal. It doesn't say if the government's appeal is sustained. It doesn't say if the alien's appeal is sustained. Well, it's problematic, because obviously the immigration judge just granted voluntary departure and as required didn't go through the specific findings that are necessary. And obviously, I mean, I know you rely on the decision in Molina-Camacho to argue that the BIA may not issue an order of removal, but Molina-Camacho did involve cancellation of removal granted by the immigration judge, while this case only involves voluntary departure. And so, you know, why should we apply the same rule for voluntary departure when the stakes are, you know, less, I think, compared to whether an alien will be removed at all? Well, with all due respect, Your Honor, I think the stakes are even greater. Voluntary departure is the minimal form of relief that the immigration judge could give to Mr. Abinant. The bare minimum. And so... Okay, but the immigration judge didn't do it right. So... Well, Your Honor, again, respectfully disagree. There's no statutory bar to defining a good moral character because the lie about Daniello's immigration status was not for the purpose of helping his immigration status. Mr. Abinant, 101F6C defines what is a statutory ineligibility under the rubric of lacking good moral character where there is false testimony. So the board was wrong at that point. The judge was right. This was not a statutory bar. She had the first opportunity to review, to assess the demeanor, the credibility of the applicant and decide, I'm going to give him this minimal relief. But assuming we disagree with you, my question is, do we still have to remand to the immigration judge or make a BIA order removal? I could find no statute permitting the BIA to do it, although the real-world consequences would be the same. Well, I would submit, Your Honor, that 1101A47B, which defines the definition of final order, is that the order of the immigration judge becomes final upon affirming such order. So what is the order that the BIA is affirming? The contingent order, if the alien fails to depart. So that doesn't make sense. The pure statutory language that we see is what's being affirmed if the respondent fails to depart as required during the 30-day period. So it doesn't follow that the board's authority under 101A47B would encompass converting the contingent. If you don't leave, then we will execute. There's nothing to execute that they've affirmed. Thank you. Do you want to reserve the balance of your time? Yes, Your Honor. Thank you. May it please the Court, Sarah Maloney for the respondent. Good morning. The Court should deny the petition for review. Pursuant to INA Section 237A2B2, the Court lacks jurisdiction over the agency's discretionary decision to deny the waiver of removal. Counsel, let me just get to the question I was asking about. As I read Molina Camacho, the BIA cannot issue an order of removal. That it's solely within the IJ's power to do so. What is your response? Because in this case, the IJ said in lieu of an order of removal, the respondent shall be permitted to depart voluntarily. And so there was no order of removal, even though there was this alternative holding. Wouldn't we have to remand? Well, this case is distinguishable from Molina Camacho in that in this case, the Court found respondent removable, or the petitioner removable. The petitioner conceded removability, and on pages 76 to 77 of the administrative record in the immigration judge's order, the immigration judge found the petitioner removable based on clear and convincing evidence. And so the board, in reversing the voluntary departure order, did not order petitioner removed in the first instance. It was merely rendering the immigration judge's order effective. I don't understand your answer. The immigration judge said in lieu of an order of removal, I give you voluntary departure. How can we say that that was an order of removal? Earlier in the immigration judge's order, prior to the order section, the immigration judge found the respondent removable. And it's our position that that is sufficient to constitute an order of deportation in the event the board reverses voluntary departure. In the real world, it makes no difference. If he gets removed, he gets removed. But I'm just trying to see that we comport with our own statutes and our own rules. And I just wanted to know your response. But thank you. Because under INA section A-47, that defines a final order of removal, the final order of deportation. And that section says that if the immigration judge makes this removal finding and the petitioner waives or the time for an appeal expires, then that order will become final as well. So that's a statutory provision that would support it. In addition, there's under the regs at 8 CFR 1241.1, when the board dismisses an appeal, the final order of removal, the immigration judge's order may become final. And, again, that happened here. So on what basis? So you're just saying we counsel the voluntary removal, I mean the voluntary departure. And, therefore, then that just makes the removal effective and we're not finding it in the first instance? Yes. All right. For the authority for the cancellation of the voluntary departure, what's your proposal? If you were writing this opinion or mem dispo, how would we write it? What's our authority for canceling the voluntary departure? Well, the board reversed that order, the order of voluntary departure. All right. So but what's their authority to do that? Well, the board as an appellate tribunal can, I mean, has review over these, over such a decision and it can reverse it and merely, you know, effect, put into effect the immigration judge's. Don't we have, I mean, we have case law that says they can't change the days for voluntary departure, right? I mean, we've had cases that have come up or say, well, you can't, you know, you can't reduce it from 60 to 30 days, that that's not, the board can't do that. So what's our authority for the board can just cancel the voluntary departure? Well, can they issue voluntary departure in the first instance, the board? I'm not sure. And the question is, can they issue an order of removal in the first instance when they, the cases seem to say that the immigration judge has to issue that. Yes. That is what the case is. Even though they can reverse the voluntary departure, they would have to remand. I just want to clarify, because we have to write these opinions and I don't want to write anything that would go against our Ninth Circuit law. Well, this case is also distinguishable from Molina Camacho in that in that case, the petitioner merely conceded removability and the immigration judge canceled his removal. Whereas here, we have a finding of the immigration judge that the petitioner is removable. Well, where is that finding? It's on pages 76 and 77. He said it, but his judgment was, and his order was, in lieu of removal, I give you voluntary departure. Yes, it is true. The immigration judge did grant voluntary departure. But, again, it's our position, as it's written in the brief, that this finding of removability is the equivalent of an order of removal and the board merely rendered it effective after a reverse voluntary departure. Thank you. As to petitioner's argument that Tejom requires an immigration judge to ask about the underlying circumstances of the initial fraud, that case doesn't, in fact, say that. It says that the agency may consider as an adverse factor the underlying nature and circumstances of the initial fraud. And in this case, petitioner is arguing that the immigration judge abused her discretion in considering the nature and underlying circumstances of his initial fraud as a positive factor, to mitigate the initial fraud. There was no evidence, there is no evidence in the record of the nature and circumstances of the underlying. I mean, what is, if we, unless he can state some sort of colorable violation, it's a dismissal, isn't it, on that part of it? Yes. And my point is this argument is merely an abusive discretion argument, and it's not a colorable constitutional or legal claim. And I guess, unless there are any other questions. Thanks. Thank you. With respect to the last point that the immigration judge, that there's no evidence in the file, the immigration judge is charged with developing a full and comprehensive record. She failed to do it in this case. We see that the immigration judge in other areas, Danilo and other areas, follow up with many questions to find out why did she lie about your other status? Why didn't the judge inquire? Why did she lie to come to the U.S.? Apparently, the immigration judge counts on both sides of the table were in the pre- Well, I thought his explanation was he doesn't have a wife here. He has a wife in the Philippines. That's what I thought you meant. I thought that's what his explanation was. And, I mean, whether you think that's a good explanation or not, it's like he's not married here and he might be, you know. So now that I understand that you mean is he married anywhere, yeah, he's married in the Philippines. He also said, I lied to protect my brother from the fate that he, Mr. Abner, finds himself before the immigration judge. That's also right in that exchange right after. So they're both there. So I think that reveals why he was doing it rather than he was just trying to be whatever. But the immigration judge under the case of Smatter of S and H, I believe, I signed it in my brief, has to develop a full and comprehensive record. It's not enough to say the burden of proof is on the alien and the alien doesn't do it. Too bad. We're sorry. No, the judge has to do it. She did it in other parts of the case. And secondly, with respect to the voluntary departure issue, the Board of Immigration Appeals has, in other cases, remanded back when it had this situation under the Molina Camacho case. I don't see this as any difference other than, as Your Honor pointed out, a contingent order. But the statute says the board can only affirm the contingent order, and there's nothing to implement and execute because he can't leave within 30 days of voluntary departure if the BIA takes it away from him. So it just doesn't fit is what I'm trying to point out. Thank you. All right. This matter will now stand submitted. Thank you both for your argument.
judges: Dw Nelson, Callahan, Carney (C Cal)